UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John E. Stewart III,<br><br>  *Plaintiff*,<br><br>v.<br><br>Illinois Department of Transportation,<br><br>  *Defendant*. | No. 21 CV 1179<br><br>Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

John E. Stewart, III filed suit against his employer, the Illinois Department of Transportation ("IDOT"), for race-based retaliation in violation of Title VII. IDOT moves for summary judgment. Because Stewart has presented no evidence that would allow a reasonable jury to find in his favor, the Court grants the motion.

I. Local Rule 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

Any party, including a *pro se* litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though [employee] is a pro se litigant" (cleaned up)); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even pro se litigants must follow procedural rules"); *Parker v. Fern*, 2024 WL 1116092, at *2 (N.D. Ill. Mar. 14, 2024) ("It is well-settled that a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules.").

Here, IDOT filed a Rule 56.1 statement, and as required by Rule 56.2, served Stewart with a "Notice to Unrepresented Litigant Opposing Summary Judgment."

[Dkts. 63, 79.][1] [2] This latter filing explains what a motion for summary judgment is and what steps Stewart needed to take to respond to the motion. Notwithstanding these instructions, Stewart failed to file any response to the motion or to the Rule 56.1 statement. The Court, on its own motion, extended the deadline for Stewart to respond to March 10, 2025, advising him in a minute order that the Court would rule on the motion without the benefit of his position if no response was filed by that date. [Dkt. 80.] Again, nothing was filed. Consequently, the Court takes all its facts from IDOT's filing and deems them admitted to the extent they are supported by evidence in the record. L.R. 56.1(e)(3).[3]

## II. Background

IDOT is a department of the State of Illinois. [Dkt. 63, ¶ 3.] Stewart, who is Black, was hired by IDOT in 2013 and is still employed there. His current position is Lead Worker, a promotion he received in 2022. [Dkt. 63, ¶¶ 5–6; Dkt. 63-2 at 7.] The events described below occurred in 2019 when Stewart's position was Highway Maintainer. [*Id.*]

*2019 Discrimination Charge*

In January 2019, Stewart filed a charge of discrimination against IDOT with the Illinois Department of Human Rights ("2019 Charge"). [Dkt. 63, ¶ 7; Dkt. 65 at 11.] The Charge alleged that Stewart's supervisor, Assistant Patrol Manager Mickael Muller, gave Stewart a negative performance evaluation for poor performance and denied him overtime because of Stewart's race and status as a disabled military veteran. [Dkt. 63, ¶ 8; Dkt. 65 at 11–14.] The Charge also alleged that Muller retaliated against Stewart for an earlier charge of discrimination Stewart filed against Muller in 2015. [Dkt. 65 at 14.] Muller became aware of the 2019 Charge on February 14, 2019, when Muller was interviewed about it by two IDOT Civil Rights Specialists. [Dkt. 63, ¶ 13.]

---

[1] Stewart was represented by counsel in this case until the Court granted counsel's motion to withdraw. Stewart did not object to that motion. [Dkt. 75.]
[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.
[3] While the facts presented in the Rule 56.1 Statement are undisputed, this does not absolve the Court of its responsibility to determine whether IDOT has "'show[n] that summary judgment [is] proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)) (noting that summary judgment may not be granted against the nonmovant when she fails to file a response "as some kind of sanction").

*Lead Worker Position*

In 2019, IDOT posted a job notice that it was accepting applications for seven vacancies for the Lead Worker position at IDOT's District 1. [*Id.* ¶ 23.] In May 2019, while still a Highway Maintainer, Stewart applied for one of the positions. [*Id.*, ¶ 9.] The selection process was conducted in accordance with IDOT's hiring procedures manual. [*Id.*, ¶¶ 14–15; Dkt. 66.]

The hiring procedure proceeded as follows: IDOT's Transactions Unit reviewed all applications it received for the Lead Worker position and provided the Interviewing Unit a list of candidates who met the minimum qualifications for the role. All candidates were interviewed by the same two interviewers who were pre-selected by the District 1 Manager. [*Id.*, ¶¶ 18–19.] During the interviews, each candidate was asked the same questions in the same order. Each candidate was independently scored by each interviewer. Candidate responses to each question were scored on a scale of 1 to 5 with 5 being the highest score. [*Id.*, ¶¶ 31–32.] The scores were added together, averaged and weighted, and the candidates were ranked from highest to lowest on an interview composite sheet. The candidates with the seven highest scores were offered the Lead Worker position and the remaining candidates were not. [*Id.*, ¶¶ 33, 35–36.]

Twenty-one candidates including Stewart interviewed for the Lead Worker position in July 2019. [Dkt. 63, ¶ 35.] Susan Aleman and Muller, who did not know one another before the interviews, were the two assigned interviewers. [*Id.*, ¶¶ 25, 47.] Aleman, an IDOT interviewer with the Human Resources department since 2007, had never met Stewart before she interviewed him. [*Id.*, ¶¶ 26, 49; Dkt. 65 at 48.] Aleman testified that she was not aware that Stewart had filed the 2019 Charge against Muller at the time of the interview. [*Id.*, ¶ 50.]

Muller was considered the "subject matter expertise" interviewer. [*Id.*, ¶ 25.] In his interviewer disclosure form, Muller wrote that he knew or had a working supervisory relationship with 16 of the interview candidates, including Stewart. [Dkt. 65 at 49–65.] Muller testified that he was not aware of the need to disclose the 2019 Charge on the interviewer disclosure form and that the form did not ask for this information. [Dkt. 63, ¶¶ 44–45; Dkt. 65 at 63.]

Stewart interviewed for the role on July 22, 2019, but was not selected for the position. [*Id.* ¶ 10.] Stewart was asked the same interview questions as every other candidate in the same order. Aleman and Muller both scored Stewart a "3" on his answers to every question, making his average score a 3. [*Id.*, ¶ 38.] Following the interviews, Stacy Kmett, a manager in the Interviewing Unit, reviewed Aleman and Muller's notes and scores for all the candidates. [Dkt. 63, ¶ 34; Dkt. 63-5, ¶¶ 16–17.] Stewart ranked thirteenth out of twenty-one applicants. [Dkt. 63, ¶ 39; Dkt. 67.] On September 23, 2019, the Lead Worker position was offered to the seven candidates

3

with the highest interview scores and all seven accepted the position that same day. [Dkt. 63, ¶ 36; Dkt. 67; Dkt. 63-9.]

Upon learning that he was not selected, Stewart filed an internal complaint with IDOT on September 24, 2019, alleging that Muller should not have participated in the interviewers in light of the 2019 Charge. IDOT investigated the complaint but determined that Muller did not violate any policy or engage in any wrongdoing though his involvement in interview process. [Dkt. 63, ¶¶ 11–12.] This lawsuit followed.

### III.  Legal Standard

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### IV.  Analysis

Stewart's complaint raises one count of retaliation under Title VII arising from the failure to promote him to the Lead Worker position in 2019. [Dkt. 1, ¶ 24 ("In retaliation for filing Charge of Discrimination Charge No. 2019CF1122, Defendant refused to promote Plaintiff while promoting other less qualified applicants without prior protected activity.")]

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer violates Title VII if it "intentionally relies in part" on an individual employee's membership in a protected class when the employee makes an adverse employment decision. *Bostock v. Clayton County*, 590 U.S. 644, 659 (2020). "[P]ut differently, if changing the employee's" race or other protected characteristic "would have yielded a different choice by the employer," then "a statutory violation has occurred." *Id.* at 659–60. To prevail on a Title VII retaliation claim, Stewart must prove: (1) he engaged in activity protected by the statute; (2) he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702, 705 (7th Cir. 2024).

4

At summary judgment, the question is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] caused the discharge or other adverse employment action." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *see also Nigro v. Ind. Univ. Health Care Assocs., Inc.*, 40 F.4th 488, 491 (7th Cir. 2022); *Purtue v. Wisc. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020). To establish causation, Stewart must "offer evidence that a retaliatory motive was a but-for cause of the challenged employment action." *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 915 (7th Cir. 2022) (internal quotation omitted).

A plaintiff may rely on the *McDonnell Douglas* burden-shifting framework to make his case. To establish a *prima facie* case of discrimination under this framework based on a failure to promote, a plaintiff must show that he (1) is a member of a protected class; (2) was qualified for the promotion; (3) applied for and was denied the promotion; and (4) the promotion was given to a member outside of the protected class who was not better qualified. *Carter v. City of Chi.*, 778 F.3d 651, 660 (7th Cir. 2015). If a plaintiff satisfies this initial showing, the burden shifts to the employer to provide a legitimate justification, before finally shifting back to the plaintiff to establish that such justification was pretextual. *Wince*, 66 F.4th at 1040; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If a plaintiff seeks to establish a race discrimination claim without utilizing the *McDonnell Douglas* framework, he must provide either direct or circumstantial evidence that would permit a reasonable factfinder to draw an inference of intentional discrimination. *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020).

It is undisputed that Stewart is a member of a protected class based on his race[4] and that he applied for and was denied the Lead Worker promotion in 2019. IDOT maintains that Stewart cannot make out the remaining *prima facie* requirements, *see* Dkt. 64 at 9, but the Court assumes for summary judgment purposes that he could do so.

The Court's task, then, is to assess whether IDOT's nondiscriminatory reason for not promoting Stewart is pretextual. This overlaps with the *Ortiz* framework, which asks whether there is direct or circumstantial evidence of discrimination. Direct evidence is "what [the employer] said or did in the specific employment decision in question." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005) (internal quotation omitted). Circumstantial evidence is evidence that "allows the trier of fact to infer intentional discrimination by the decisionmaker." *Id.* at 720

---

[4] The Complaint references discrimination based on military status, but Title VII only covers unlawful employment practices and retaliation on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Claims for discrimination based on military status fall under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311, which Stewart does not invoke. *Venticinque v. City of Chi. Dep't of Aviation*, 2022 WL 4095056, at *6 (N.D. Ill. Sept. 7, 2022).

(cleaned up). The Seventh Circuit has "identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll* 953 F.3d at 929. In the Title VII retaliation context, circumstantial evidence of causation might include "suspicious timing, a pretextual explanation for the [action], and evidence that similarly situated employees were treated differently," but this list is not exclusive. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (internal quotation omitted).

Finally, under *Ortiz*, the Court looks at all the evidence together and asks simply "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] caused the discharge or other adverse employment action" at issue. 834 F.3d at 765; *see also Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755 at 760 (7th Cir. 2022) ("[C]ourts must assesses the evidence as a whole, rather than asking whether any particular piece of evidence proves the case by itself." (internal quotation omitted)).

Stewart has not come forward with evidence showing that the reason for denying him the promotion is pretextual. First, Muller knew of Stewart's protected activity when Stewart interviewed for the position in July 2019—it is undisputed that Stewart filed his Charge in January 2019 and that Muller became aware of the Charge on February 14, 2019. [Dkt. 63, ¶ 13.] But Muller's involvement in the interview process is not sufficient, standing alone, to establish a retaliatory motive. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 633 (7th Cir. 2020) ("A valid retaliation claim requires that the decisionmaker know of the protected activity, but that does not mean one can infer retaliation from the decisionmaker's knowledge alone." (citation omitted)). It is undisputed that Aleman, the second interviewer, was unaware of the 2019 Charge, as was Kmett. [Dkt. 63, ¶¶ 46–48, 50–51.] The undisputed evidence also establishes that Aleman and Muller did not discuss the 2019 Charge with one another and Aleman had never met Stewart before she interviewed him. [*Id.*, ¶¶ 46–47, 49.] Both Aleman and Muller separately scored Stewart a "3" on his answers to every question. [*Id.*, ¶ 38.] This evidence, all of which is undisputed, sufficiently establishes that Stewart's protected activity had nothing to do with IDOT's decision not to promote him.

Second, the Court considers timing, but the timing of IDOT's decision does not support an inference of causation for the reasons IDOT argues. Stewart did not interview for the Lead Worker position until July 2019, five months after Muller was made aware of Stewart's 2019 Charge. [*Id.*, ¶ 45.] For an inference of causation to be drawn based solely on timing, courts "typically allow no more than a few days to elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012); *Sweet v. Town of Bargersville*, 18 F.4th 273, 279 (7th Cir. 2021) ("[E]ven if November rather than January is the relevant point in

time, we're left with a three-month gap—still too long to support an inference of retaliatory motive."). Here, the months long gap between Stewart's protected activity and IDOT's decision not to promote him in September 2019 does not suggest pretext.

Additional evidence could strengthen a causal connection, but Stewart has not come forward with any. For example, he has not pointed to evidence of suggestive comments or conduct, or different treatment of similarly situated people. Nor does he point to evidence suggesting that IDOT's stated reason for denying him the promotion—that the seven spots were offered to the seven candidates with the highest average interview scores—was a lie. Stewart does not dispute the way in which the interviews proceeded or how the applicants were evaluated, both of which align with the procedures outlined in the hiring manual. [Dkt. 66 at 28–34.] All candidates were asked identical pre-determined questions, scored separately by the same two interviewers, and ranked from highest to lowest based on their average weighted score. It is undisputed that only seven candidates could be offered the position, and that the spots were offered to the seven candidates with the highest scores. Stewart was undisputedly not among them. [Dkt. 67.] Stewart identifies nothing from which a reasonable fact finder could conclude that IDOT's explanation for selecting the first seven candidates with higher scores was a pretext for discrimination. Indeed, the standardized interview format and consistent scores by Aleman and Muller during Stewart's interview undermine any inference of causation. *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010).

Nothing on this record constitutes sufficient evidence of race discrimination; even in a pile, it does not amount to evidence from which a jury could reasonably conclude that any alleged discrimination was because of membership in a protected class. *Ortiz*, 834 F.3d at 765. Because Stewart has failed to raise any triable issue of fact, IDOT is entitled to summary judgment.

## V. Conclusion

For the foregoing reasons, IDOT's motion for summary judgment [Dkt. 62] is granted.

Enter: 21 CV 1179
Date: March 18, 2025

_____
Lindsay C. Jenkins
United States District Judge

7